# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **MICHAEL CORY HALLIBURTON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:21-cv-2210-SHL-atc |
| | ) |
| **AMY WEIRICH, in her official** | ) |
| **and individual capacities, and** | ) |
| **SHELBY COUNTY,** | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Before the Court by Order of Reference[1] are Defendant Shelby County's motion to dismiss, filed on December 16, 2023 (ECF No. 13), and Defendant Amy Weirich's motion to dismiss, filed on December 26, 2023 (ECF No. 17). Pro se Plaintiff Michael Cory Halliburton filed a response on February 1, 2024.[2] (ECF No. 18.) Weirich filed a reply on February 5, 2024. (ECF No. 19.) For the reasons set forth below, the Court recommends that both motions to dismiss be GRANTED.

---

[1] Pursuant to Administrative Order 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.

[2] Though Halliburton does not specify as such, the Court interprets this filing to be a response to both motions to dismiss.

**PROPOSED FINDINGS OF FACT**

**I.    Factual Background**

The basis of this suit is the state criminal prosecution of Halliburton. As previously recounted by the Court:

> On September 6, 2012, Halliburton attempted to murder his wife by beating her with a metal knife sharpener. *See Halliburton v. State*, No. W2019-01458-CCA-R3-PC, 2020 WL 4727434, at *1 (Tenn. Crim. App. Aug. 13, 2020), *perm. appeal denied*, (Tenn. Dec. 3, 2020). On August 26, 2014, a Shelby County grand jury returned a bill of indictment against Halliburton for one count of attempted first-degree murder, two counts of aggravated assault, and one count of domestic assault. (*See* No. 2:21-cv-2265-SHL-atc ECF No. 13-1 at Page ID 1429.) Shelby County District Attorney General Amy Weirich signed the bill of indictment. (*Id.* at PageID 1425–28.)
>
> On May 9, 2015, the jury at Halliburton's criminal trial convicted him on all charges. *See State v. Halliburton*, No. S2015-02157-CCA-R3-CD, 2016 WL 7102747, at *1 (Tenn. Crim. App. Dec. 6, 2016), *perm. appeal denied*, (Tenn. Apr. 13, 2017); (No. 2:21-cv-2265 ECF No. 13-8 at Page ID 2401.) The trial court granted Halliburton's motion for a new trial, but the Tennessee Court of Criminal Appeals (the "TCCA") reversed and remanded the matter to a successor trial court following the State's appeal. *See Halliburton*, 2016 WL 7012747, at *1. The TCCA ordered the successor trial court to hold a new sentencing and motion-for-a-new-trial hearing. *Id.*
>
> On remand, the successor court imposed a twenty-one-year sentence of imprisonment and denied Halliburton's motion for a new trial. *Id.* Halliburton appealed to the TCCA, which affirmed the judgments of conviction. *Id.* The Tennessee Supreme Court denied Halliburton's application for discretionary review. *Id.*
>
> On February 20, 2018, Halliburton filed a *pro se* petition for post-conviction relief in the trial court. *Halliburton v. State*, No. W2019-01458-CCA-R3-PC, 2020 WL 4727434, at *1 (Tenn. Crim. App. Aug. 13, 2020), *perm. appeal denied*, (Tenn. Dec. 3, 2020); (*See also* No. 2:21-cv-2265 ECF No. 13-22 at Page ID 2805–12.) Post-conviction counsel was appointed, and he filed an eighty-page amended petition for relief. *Id.* The trial court held an evidentiary hearing on the petitions and denied relief. *Id.* at *1–3. Halliburton appealed that denial of post-conviction relief to the TCCA. *See id.* at *1–5. The TCCA affirmed the trial court's judgment. *Id.* at *1. On December 3, 2020, the Tennessee Supreme Court denied Halliburton's discretionary review application. (No. 2:21-cv-2265 ECF No. 13-32 at Page ID 3256.)

> On April 28, 2021, Halliburton filed a petition under 28 U.S.C. § 2254 for a writ
> of habeas corpus. (No. 2:21-cv-2265 ECF No. 1.) Halliburton's habeas action is
> pending before this Court.

(ECF No. 7, at 2–3.) Halliburton now brings claims related to those proceedings. He was released on parole on October 25, 2022. (ECF No. 8 ¶ 5.)

After his conviction, appeals, and multiple filings of complaints against several attorneys and judges, Halliburton alleges that, "[o]n March 25, 2020, Ms. Weirich issue[d] a press release to the Associated Press stating that Plaintiff has filed complaints against lawyers and judges and that he should serve all twenty-one years of his sentence. She also states that Plaintiff will come up for parole again in 2022." (*Id.* ¶ 93.) Halliburton also alleges that Weirich has never publicly called for other parole-eligible inmates to serve their full sentence, and he asserts that he "would at a maximum serve 66% of his sentence." (*Id.* ¶ 94.) Though Halliburton states that the press release is attached to the amended complaint, it is not and does not otherwise appear in the record in this case. Instead, he attaches an Associated Press article published March 26, 2020. The only reference to a press release is the following:

> Four members of the seven-person Tennessee Board of Parole voted earlier this
> month to decline parole for Halliburton, the Shelby County district attorney's
> office said in a news release Wednesday. Another hearing has been set in March
> 2022.

(*Id.* at PageID 121.)

## II.   Procedural Background

Halliburton filed his complaint on April 2, 2021, alleging claims against Weirich under 42 U.S.C. § 1983. (ECF No. 1.) On August 9, 2023, Chief United States District Judge Sheryl H. Lipman entered an Order that, among other things, dismissed the original complaint without prejudice and granted Halliburton leave to amend it within twenty-one days. (ECF No. 7.) Judge Lipman also ordered the Clerk's office to modify the docket and add Shelby County as a

3

defendant.  (*Id.*)  Halliburton filed his amended complaint against Weirich and Shelby County on August 31, 2023.  (ECF No. 8.)

In his amended complaint, Halliburton asserts three claims under § 1983: (1) a claim "[a]gainst Shelby County—Ms. Weirich in Her Official Capacity" for unconstitutional practices in accordance with the policies and customs of Shelby County, (2) a claim against Weirich in her individual capacity for colluding with others to deny Halliburton due process, including by "us[ing] the apparatus of the judicial system in order to obtain an illegal end—that is, the maintenance of a conviction not obtained through legal means," and (3) a claim against Weirich in her individual capacity for filing a press release in retaliation against Halliburton for "exercis[ing] his right to file appeals and complaints against public officials and officers of the court with the appropriate disciplinary authorities."  (*Id.* ¶¶ 106–39.)

## **PROPOSED CONCLUSIONS OF LAW**

**I.   Legal Standard**

Both motions seek dismissal for failure to state a claim.  (ECF No. 13-1; ECF No. 17-1.)  To determine whether an individual has stated a claim for which relief may be granted, the Court applies the standards under Rule 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  The Court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

4

Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to pro se complaints, "however inartfully pleaded"). Nevertheless, pro se litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, but it would also transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a

5

plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)). "A pro se complaint must still 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Shelby v. Greystar Mgmt. Servs.*, L.P., No. 2:17-cv-02650-SHM-cgc, 2018 WL 386647, at *2 (W.D. Tenn. Jan. 11, 2018) (quoting *Barnett v. Luttrell*, 414 F. App'x. 784, 786 (6th Cir. 2011)).

## II.     Halliburton's Amended Complaint Is Untimely.

Weirich argues that the case should be dismissed because Halliburton failed to timely amend his complaint. (ECF No. 17-1, at 4.) The Court ordered Halliburton to file his amended complaint within twenty-one days of August 8, 2023—in other words, by August 29, 2023. (ECF No. 7.) Halliburton admits that he did not mail his amended complaint to the Clerk's office until August 30, 2023, but argues that he is entitled to an extra three days pursuant to Federal Rule of Civil Procedure 6(d) because he received the Court's Order by mail. (ECF No. 18 ¶ 12.)

Rule 6(d), "Additional Time After Certain Kinds of Service," provides: "When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), . . . 3 days are added after the period would otherwise expire under Rule 6(a)." The rule is inapplicable to Halliburton's deadline to file his amended complaint, as Halliburton was not ordered to file the amended complaint "within a specified time after being served"—for example, within twenty-one days of *service* of the Order—instead, he was directed to file the amended complaint within twenty-one days of the *date* of the Order. Because Rule 6(d) "applies only when a period of time runs from the date of service," and Halliburton's deadline ran from the date of entry of the Order, "Rule 6(d) does not apply." *Hillside Prods., Inc. v. Cnty. of Macomb*, 448 F. App'x 592, 593 (6th Cir. 2012) (citations omitted). Weirich is thus correct that

6

Halliburton's amended complaint was not timely filed and is subject to dismissal on that basis. The Court will, however, consider the amended complaint in making the recommendations herein.

### III.     Halliburton Has Failed to State a Claim Against Shelby County.

Shelby County argues that it is not a proper party to this lawsuit because Halliburton's claims against Weirich in her official capacity relate to her employment by the state of Tennessee, not by Shelby County. (ECF No. 13-1, at 4.) Halliburton's claims arise from Weirich's conduct while employed by the Shelby County District Attorney's Office. (*See generally* ECF No. 8.) Shelby County is correct that, under Tennessee law, "district attorneys general" are "[s]tate employee[s]." Tenn. Code Ann. § 9-4-1101(2); *see also White ex rel. Swafford v. Gerbitz*, 860 F.2d 661, 663 n.2 (6th Cir. 1988) (citing Tenn. Code Ann. §§ 8-7-103, 8-7-105, 8-7-201). As such, official capacity claims against state employees "constitute[]" an action against the state." *White*, 860 F.2d at 663 n.2 (citations omitted). Halliburton does not dispute these arguments and instead directs his response primarily to the "State," in apparent acceptance of the premise that his claims are against the State of Tennessee and not Shelby County. (*See* ECF No. 18.) In addition, counsel from the Office of the Tennessee Attorney General have appeared on behalf of Weirich in both her individual and official capacities, and have moved for dismissal of both the individual and official capacity claims, such that the State of Tennessee's interests appear to be represented in this suit. (*See* ECF Nos. 15, 16.) It is recommended that all claims against Shelby County be dismissed.

### IV.     Halliburton Has Failed to State an Official-Capacity Claim Against Weirich.

As discussed above, Halliburton's official-capacity claim against Weirich (the First Claim) arises from her employment by the State of Tennessee and therefore implicates

7

Tennessee's sovereign immunity. The Eleventh Amendment bars actions against states and state officers acting in their official capacity "unless they consent to be sued or Congress, pursuant to a valid exercise of its power, unequivocally expresses its intent to abrogate sovereign immunity." *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 863 (6th Cir. 2024) (quoting *Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024)). Neither exception applies here, as Tennessee has not waived its sovereign immunity, and Congress has not abrogated sovereign immunity via § 1983. *Ingle v. Shelby Cnty.*, No. 2:19-cv-02080-TLP-tmp, 2019 WL 5684518, at *3 (W.D. Tenn. Nov. 1, 2019) (citing Tenn. Code Ann. § 20-13-102(a); *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("[A] state is not a person under 42 U.S.C. § 1983.").

The nature of the relief requested is also relevant to the analysis: "[s]overeign immunity precludes suits against states and their entities or officers for monetary damages or retrospective relief but permits claims for prospective relief when brought against state officers in their official capacity." *Ashford*, 89 F.4th at 969 (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). Halliburton makes one request for relief against Weirich in her official capacity:[3]

> Plaintiff requests that this Court take judicial notice that Ms. Weirich, in her official capacity, has repeatedly and knowingly[] violated the standards of professional conduct outlined in the Tennessee Supreme Court Rules. In particular Tenn. Sup. Ct. R. 8, RPC 3.4: Fairness to Opposing Party and Counsel; RPC 3.5: Impartiality and Decorum of the Tribunal; RPC 3.8: Special Responsibilities of A Prosecutor; RJC 8.2: Judicial and Legal Officials; and RJC 8.4: Misconduct, with special attention to "(c) engage in conduct involving

---

[3] Halliburton also requests monetary damages against Weirich, but those damages are explicitly sought from Weirich in her individual capacity only. (*Id.* ¶¶ 140, 141.) As discussed below, it is recommended that the individual capacity claims be dismissed. Even if Halliburton had sought these monetary damages from Weirich in her official capacity, however, relief would still be unavailable because the Eleventh Amendment bars monetary relief against state officers in their official capacity. *See Stanley*, 105 F.4th at 863.

8

>dishonesty, fraud, deceit, or misrepresentation" and "(d) engage in conduct that is prejudicial to the administration of justice."

(ECF No. 8 ¶ 143.)

Reading this request in a light most favorable to Halliburton, the Court construes it as one for a declaratory judgment that Weirich violated the cited rules.[4] Though *Ex parte Young* permits a plaintiff to seek "prospective injunctive relief" against State actors in their official capacity "to remediate . . . ongoing harms," *In re Flint Water Cases*, 960 F.3d 303, 334 (6th Cir. 2020) (citing *Milliken v. Bradley*, 433 U.S. 267, 290 (1977)), Halliburton's request is neither prospective nor remedial. Instead, Halliburton seeks a retrospective declaration about Weirich's alleged past conduct. And he does not plausibly allege an ongoing violation of federal law by Weirich or indicate how any such declaration would serve a remedial purpose. *See Papasan v. Allain*, 478 U.S. 265, 278 (1986) ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which

---

[4] Though Halliburton styles his request as one for "judicial notice," that evidentiary device appears inapplicable to his request. Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The Court cannot, however, take judicial notice of the substantive facts . . . when those facts are in dispute." *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 3:16-cv-466, 2022 WL 1913334, at *3 (S.D. Ohio June 3, 2022) (citing *Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012)); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014)); *see also Omnicare*, 769 F.3d at 467 ("[W]e could not consider the statements contained in the document for the truth of the matter asserted, even at the motion-to-dismiss stage."). The "appropriate fashion" for resolving disputed facts is not through judicial notice but through "a fair trial" that "includes rebuttal evidence, cross-examination, usually confrontation, and argument (either written or oral or both)." Fed. R. Evid. 201(b) advisory committee's note to 1972 amendment. Those "traditional methods" of proving facts should only be dispensed with "in clear cases." *Id.*

that relief is intended indirectly to encourage compliance with federal law through deterrence . . . . [D]eterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."). Halliburton's generalized and conclusory allegations about a broad conspiracy among Weirich and various members of the judiciary, lawyers, and other governmental officials are insufficient to meet that standard, and thus his request is not cognizable under *Ex parte Young*. It is therefore recommended that Halliburton's official capacity claim against Weirich be dismissed.

## V.     Halliburton Has Failed to State a Claim Against the State of Tennessee.

Relatedly, Halliburton has not alleged a cognizable claim against the State of Tennessee. Halliburton requests the following additional form of relief:

> Plaintiff requests that Shelby County implement a program of training for the Shelby County District Attorney's Office personnel to correct the abuses so prevalent during the tenure of Bill Gibbons and Amy Weirich, to wit, Griffin violations and improper communications with judges and counsel. In addition, review of all convictions in which Ms. Weirich or her office might have abused their authority with the goal of offering reasonable relief to affected parties.

(ECF No. 8 ¶ 144.) Halliburton seeks what is, in effect, an injunction ordering Shelby County to implement a training program and post-conviction-review process at the Shelby County District Attorney's Office. As discussed above, the Shelby County District Attorney's Office is an entity of the State of Tennessee, not Shelby County, and Shelby County is not a proper party to this lawsuit. Even construing this request in Halliburton's favor, however, as a claim against the State of Tennessee, the request for injunctive relief must still fail. "*Ex parte Young* does not allow suits 'against the state itself.'" *Stanley*, 105 F.4th at 864 (quoting *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016)). Any request for an injunction against Tennessee is therefore barred by sovereign immunity.

10

## VI. Halliburton Has Failed to State an Individual-Capacity Claim Against Weirich for Fourteenth Amendment Violations.

In the Second Claim of the amended complaint, Halliburton asserts that Weirich colluded with Tennessee judges and others to deny his due process rights under the Fourteenth Amendment throughout his criminal prosecution in state court, including the appellate proceedings thereafter. (ECF No. 8 ¶¶ 112–27.) In addition, Halliburton seeks damages against Weirich in her individual capacity for "false imprisonment of Plaintiff." (ECF No. 8 ¶ 140.) The allegation of false imprisonment is presumably related to the custodial sentence that resulted from Halliburton's criminal case. The Second Claim is subject to dismissal for multiple reasons.[5]

### A. Halliburton cannot challenge the validity of his conviction in this action.

Weirich is correct that Halliburton's claim related to a denial of due process in the state criminal proceedings is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* line of cases holds that, "where a successful claim would necessarily lead to a shorter sentence or imply the invalidity of a sentence or conviction, the claim must be brought through habeas," not § 1983. *Kitchen v. Whitmer*, 106 F.4th 525, 544 (6th Cir. 2024); *see also id.* at 538 (finding that the district court erred in considering only whether the plaintiff's challenge of his confinement would result in quicker release and should have also considered whether the challenge also "'indirectly' through a judicial holding [would] 'necessarily impl[y] the unlawfulness' of one's custody" (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005))). Disallowing such challenges in a § 1983 suit emphasizes "the importance of making sure prisoners do not use vehicles other than habeas to invalidate their sentences." *Id.* at 540.

---

[5] Because this claim should be dismissed for the reasons discussed herein, the Court does not consider the parties' arguments regarding the statute of limitations.

11

Here, Halliburton's claim boils down to the premise that he was wrongly convicted. He alleges, for example, that "Amy Weirich, Judge Page, and Judge Carter used the apparatus of the judicial system in order to obtain an illegal end—that is, the maintenance of a conviction not obtained through legal means." (ECF No. 8 ¶ 123.) As such, any relief that could be granted on his claims would imply that his conviction was invalid, but such claims can only be raised in his habeas case (the federal version of which is still pending, *see Halliburton v. Upton*, No. 2:21-cv-02265-SHL-atc (W.D. Tenn.)). Halliburton "is inevitably challenging his sentence, the true source of the alleged constitutional injury," *Kitchen*, 106 F.4th at 541—a claim that is barred by *Heck*. It is therefore recommended that this claim be dismissed.

> B. <u>Weirich has absolute immunity for acts within the scope of her prosecutorial duties.</u>

Halliburton's claim against Weirich is precluded by absolute immunity. A prosecutor "enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). "Prosecutorial immunity from suit under § 1983 applies to activities that are 'integral part[s] of the judicial process.'" *Cremeans v. Taczak*, No. 22-3730, 2023 WL 5206437, at *2 (6th Cir. Aug. 14, 2023) (quoting *Imbler*, 424 U.S. at 430). "The analytical key to prosecutorial immunity . . . is *advocacy*— whether the actions in question are those of an advocate." *Id.* (quoting *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000)).

Halliburton's allegations regarding Weirich's conduct as a prosecutor during his prosecution necessarily fall within the scope of absolute prosecutorial immunity. Allegations of "a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding . . . does not pierce the immunity extended to judges and prosecutors." *Grant v. Hollenbach*, 870 F.2d 1135, 1140 (6th Cir. 1989) (quoting *Ashelman v. Pope*, 793 F.2d 1072 (9th

12

Cir. 1986)); *see also id.* ("We also are mindful that, 'this immunity does leave the generally wronged defendant without civil redress against a prosecutor whose malicious or dishonest conduct deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." (quoting *Imbler*, 424 U.S. at 428)). Weirich is absolutely immune from Halliburton's claim arising from her prosecution of his case, and it is recommended that the claim be dismissed.[6]

## VII. Halliburton Has Failed to State an Individual-Capacity Claim Against Weirich for First Amendment Violations.

In the Third Claim of the amended complaint, Halliburton asserts that, after he "exercised his right to file appeals and complaints against public officials and officers of the court with the appropriate disciplinary authorities, Ms. Weirich issued a press release in retaliation declaring that Plaintiff should serve all 21 years of his sentence." (ECF No. 8 ¶ 131.) Halliburton alleges that Weirich did so with the "inten[t] to produce a chill that would dissuade me from any further attempts to gain redress for grievances against government officials in any venue," in violation of his "First Amendment right to access the courts unmolested." (ECF No. 18 ¶ 25.) Weirich argues that she is entitled to qualified immunity on this claim.

The doctrine of qualified immunity provides that "government officials are not subject to damages liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant alleges qualified immunity as a defense, "the plaintiffs bear the burden of showing that the defendants are not entitled to

---

[6] Halliburton argues in his response that Weirich cannot rely on executive privilege (ECF No. 18 ¶ 17), but Weirich has not asserted executive privilege in this case.

13

qualified immunity." *Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 695 (6th Cir. 2020) (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)).  A two-step inquiry guides the analysis: courts "consider (1) whether the alleged facts, viewed in a light most favorable to plaintiff, show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was 'clearly established.'" *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

     A.     <u>Step One: Allegations of a constitutional violation</u>

As to the first step, Halliburton must plead a claim of First Amendment retaliation by alleging that:

> (1) the plaintiff engaged in protected activity; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir. 2024) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).  Construing the allegations of the amended complaint in Halliburton's favor, he has adequately pled each element.

Halliburton has pled the first element, that he engaged in constitutionally protected activity, by alleging that he filed appeals and complaints against government officials, as prisoners have a "constitutional right of access to the courts." *Thaddeus-X*, 175 F.3d at 391. Though Weirich focuses primarily on Halliburton's allegations about the impact of the press release on his parole efforts, his allegations are not so limited—he claims Weirich was attempting to chill all of his litigation activity related to his criminal prosecution, not just his parole efforts.  (*See* ECF No. 8 ¶ 131.)

As to the second element, Halliburton has arguably pled an adverse action sufficient to chill an ordinary person from exercising their First Amendment rights.  He alleges that Weirich

14

issued a press release stating that he should serve all twenty-one years of his sentence, whereas he asserts that he would have been required to serve, at most, 66% of his sentence. (ECF No. 8 ¶¶ 93, 94.) He also claims that the press release referred to his multiple "complaints against lawyers and judges." (*Id.* ¶ 93.)[7] It appears that Halliburton's position is that Weirich announced her opinion that Halliburton should serve twenty-one years, instead of fourteen, as a way to threaten him against pursuing his complaints against lawyers and judges—that threat presumably being that she would advocate that he serve the longer sentence. (*See* ECF No. 8 ¶ 137 ("Ms. Weirich took adverse action by threatening Plaintiff with additional prison time."); ECF No. 18, at 15 ("Her call for me to serve the entirety of my sentence incarcerated was a call for the Board of Parole to act in a way contrary to its own policies and procedures.").)[8] In other words, he arguably has alleged that, via the press release, Weirich was indicating to him that she was going to take a harsher position on the length of his remaining sentence than she otherwise would (or collude with others to ensure a longer sentence) if he did not cease the protected activity. Given the deferential standard in Halliburton's favor at this stage, and stretching his allegations to the limit, he has somewhat plausibly alleged that the press release contained a threat that would deter an ordinary person from engaging in the protected activity.[9] *See*

---

[7] As discussed above, Halliburton has not included the press release in the record in this case. Weirich, however, does not dispute its contents as described by Halliburton. His allegations are therefore accepted as true for purposes of the recommendations herein.

[8] Halliburton admits that any such act would be "something [the parole board] had no legal right to do" and that "the time for [Weirich] to have any opinion about my sentence had long since passed" (ECF No. 18, at 15), diminishing the plausibility of his allegations. He also argues, however, that "Weirich's press release has particular persuasive power since I have already witnessed repeated violations of my constitutional rights by judges and attorneys in support of her—even attorneys who were putatively my advocates." (*Id.* at 18.)

[9] On the other hand, Halliburton's allegation of an adverse action by Weirich in announcing the date of his next parole hearing is not plausible. According to Halliburton, "[h]er announcement of my next parole hearing to the general public is beyond the scope of her advocacy, and it also

15

*Richards*, 96 F.4th at 918 ("[U]nless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury." (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002))); *see also MacIntosh v. Clous*, 69 F.4th 309, 316 (6th Cir. 2023) ("Because 'nothing justifies harassing people for exercising their constitutional rights,' a deterrent effect on speech 'need not be great' to be actionable." (quoting *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021) (internal quotations omitted))). Furthermore, that the press release did not actually deter Halliburton from filing complaints against government officials is not relevant. "*Actual* deterrence need not be shown." *Id.* (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005)).

Halliburton has also adequately pled causation as required by the third element. He alleges that Weirich issued the press release specifically to dissuade him from the protected activity, and he supports that allegation by noting that the press release itself referred to his protected activity. Those allegations are sufficient to show causation at this stage. *See Richards*, 96 F.4th at 918–19 ("Under the third element, '[u]sually the question of causation is a factual issue to be resolved by the jury, and may be satisfied by circumstantial evidence.'" (quoting *Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018))).

B.      Step Two: Whether the constitutional right was clearly established

Regardless of whether Halliburton has adequately pled a violation of a constitutional right, however, he cannot show that the right was clearly established. "Existing law must place an official's conduct 'beyond debate' such that any reasonable official would understand that her

---

means that any person reading the AP press release can file an anonymous letter opposing my release. I have no recourse against such a letter." (ECF No. 18, at 15.) No ordinary person would be deterred from the alleged protected activity by a press release that includes the date of a parole hearing, information that is already publicly available.

16

conduct was unlawful." *Finley v. Huss*, 102 F.4th 789, 808 (6th Cir. 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "A question is beyond debate when then-existing precedent prohibits the challenged conduct . . . or when the conduct is so egregious that any reasonable official would realize that it violates the Constitution." *Id.* (citing *al-Kidd*, 563 U.S. at 741; *Taylor v. Riojas*, 592 U.S. 7, 9 (2020)). "The critical threshold step is defining the right at issue. The Supreme Court has repeatedly commanded inferior courts not to define rights at too high a level of generality. A right must be defined with enough specificity to address 'whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.* (citing *White v. Pauly*, 580 U.S. 73, 79 (2017); *al-Kidd*, 563 U.S. at 742; *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018)).

The Court thus frames the inquiry as follows: Did the law in 2020 clearly establish that an official retaliates against a prisoner in violation of the First Amendment by publicly stating that the prisoner should serve his entire sentence, while referencing complaints the prisoner has made against attorneys and judges? Halliburton has offered nothing to show that it did. He cites *Thaddeus-X* and *McDaniel v. Rhodes*, 512 F. Supp. 117 (S.D. Ohio 1981), but neither clearly establishes the right he seeks to assert. (*See* ECF No. 8 ¶¶ 136, 138.) In *Thaddeus-X*, the alleged retaliation against the plaintiff prisoners included "[h]arassment, physical threats, and transfer" to undesirable areas of the prison. 175 F.3d at 399. In *McDaniel*, the alleged retaliation against the plaintiff prisoner included physical and psychological abuse, general harassment, and parole revocation on false charges. 512 F. Supp. at 118. Neither of these cases involve an official who merely publicized a position that Halliburton has failed to even demonstrate she was not entitled to take. Because the law did not clearly establish that Weirich's press release constitutes a

17

violation of Halliburton's First Amendment rights, she is entitled to qualified immunity on this claim, and it is recommended that the claim be dismissed.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that the motions to dismiss be GRANTED and this case be dismissed with prejudice.

Respectfully submitted this 30th day of July, 2024.

> s/Annie T. Christoff
> ANNIE T. CHRISTOFF
> UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute forfeiture/waiver of objections, exceptions, and further appeal.